IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| TIMOTHY JAMES NEILL, JR., | ) | |
|---|---|---|
| Movant, | ) | |
| | ) | No. 2:14-cv-00013 |
| v. | ) | Senior Judge Haynes |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM

Movant, Timothy James Neill, Jr., filed this pro se action under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct sentence for possessing a firearm as a convicted felon, for which he received a sentence of 92 months imprisonment. Movant asserts: (1) that his guilty plea was "unlawfully induced" because Movant was advised that a guilty plea was in his interest based on the evidence and his confession; (2) that his conviction that was based upon his coerced confession is invalid; (3) that his conviction that was based upon evidence seized as a result of an unconstitutional search is invalid; and (4) that his attorney was ineffective because he failed to advise him properly during plea negotiations and he failed to file a motion to suppress his conviction and other evidence.

The Court ordered Respondent to respond. (Docket Entry No. 2). Movant filed an amended motion (Docket Entry No. 9), asserting additional claims that his attorney was ineffective because (1) he failed to argue for a departure at sentencing, (2) he failed to present evidence regarding the circumstances of Movant's plea negotiations and Movant's mental health history at sentencing, (3) he improperly advised Movant at sentencing, and (3) he failed to file an appeal despite Movant advising him to do so.

The Court appointed the Federal Public Defender to represent Movant (Docket entry No. 10), and the Federal Public Defender filed an amended motion to vacate[1] (Docket Entry No. 21), asserting: (1) that Movant's attorney was ineffective because he failed to file a motion to suppress evidence, he failed to advise him properly during plea negotiations regarding the likelihood of conviction and his sentencing exposure, he failed to advise him properly following his conviction regarding the decision to appeal, and he failed to present mitigation evidence and propose partially concurrent sentencing at sentencing; and (2) that Movant's guilty plea was involuntary and without the understanding of the viability of a suppression motion, the likelihood of conviction, and his sentencing exposure.

Respondent filed a response (Docket Entry No. 22), asserting: (1) that Movant's ineffective assistance of counsel claims have no factual or legal basis and that the ineffectiveness alleged by Movant would not have affected the outcome of the action; (2) that Movant's guilty plea was voluntary and knowing because his attorney's advice was sound; and (3) that the Bureau of Prisons erred in calculating Movant's sentence by failing to credit Movant for the time between his federal arrest and his return to Tennessee custody. The Court concluded that an evidentiary hearing was necessary as to Movant's ineffective assistance of counsel claims (Docket Entry No. 30), and an

---

[1] "Generally, amended pleadings supersede original pleadings." Hayward v. Cleveland Clinic Found., 759 F.3d 601, 617 (6th Cir. 2014). "This rule applies to habeas petitions." Braden v. United States, 817 F.3d 926, 930 (6th Cir. 2016) (citing Calhoun v. Bergh, 769 F.3d 409, 410 (6th Cir. 2014) cert. denied sub nom. Calhoun v. Booker, --U.S. --, 135 S.Ct. 1403 (2015)). Yet, the Sixth Circuit has "recognized exceptions to this rule where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading, and where a party is forced to amend a pleading by court order." Id. (citations omitted). "An amended pleading supersedes a former pleading if the amended pleading 'is complete in itself and does not refer to or adopt a former pleading[.]'" Id. (citations omitted). Movant's counsel specifically states that the amended motion supplements Movant's prior claims. (Docket Entry No. 21 at 2). Thus, the Court will address the claims in both motions to vacate.

evidentiary hearing was held on June 29, 2015 (Docket Entry No. 53, Transcript of Evidentiary Hearing Proceedings).

Movant's appointed counsel filed a second amended motion to vacate (Docket Entry No. 49), restating the claims in Movant's first amended motion to vacate (Docket Entry No. 21) and asserting an additional claim that Movant's base offense level under the sentencing guidelines was enhanced pursuant to a clause that is unconstitutionally vague in light of the United States Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). The Court ordered Respondent to respond to Movant's second amended motion (Docket Entry No. 51), to which Respondent filed a response (Docket Entry No. 59), asserting: (1) that the testimony of Movant and Movant's counsel at the evidentiary hearing reflect that Movant's counsel's performance was not deficient and that Movant did not suffer any prejudice from any alleged inaction by his counsel; and (2) that, if the Court does not hold this action in abeyance pending the Supreme Court's ruling in <u>Welch v. United States</u>, 136 S.Ct. 790 (2016), the Court should not apply <u>Johnson</u> retroactively to Movant's claim arising under the sentencing guidelines. Movant filed a reply (Docket Entry No. 68), asserting that he is entitled to relief under <u>Johnson</u> and that the Court should not hold this action in abeyance because <u>Welch</u> is not likely to address claims arising under the guidelines. Respondent filed a sur-reply (Docket Entry No. 71), asserting that the Court should hold this action in abeyance because <u>Welch</u> will likely provide instruction on or resolve this issue.

## A. Findings of Fact

On March 2, 2011, a federal grand jury indicted Movant for possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).[2] (Criminal No. 2:11-cr-00001-5, Docket Entry No. 3). On September 12, 2011, Movant pled guilty to possessing a firearm as a convicted felon. Id., Docket Entry No. 229. The plea petition states, in part, the following:

> (3) I have received a copy of the Indictment before being called upon to plead and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in the Indictment.
>
> (4) I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the Indictment. My lawyer has counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.
>
> (5) I understand that the statutory penalties for the offense with which I am charged are as follows:
>
>> **Count Five** (18 U.S.C. § 922(g)(1), felon in possession of a firearm) - carried up to ten (10) years imprisonment, a fine of up to $250,000.00, or both, a term of supervised release of up to three (3) years, and a $100.00 special assessment. Should Defendant Neill be found to have three (3) prior conviction for a violent felony, serious drug offense, or both, 18 U.S.C. 924(e)(1) requires a sentence of not less than fifteen (15) years nor more than life imprisonment, a fine of up to $250,000, or both, and a term of supervised release of up to five (5) years.
>
> (6) I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specific in 18 U.S.C. § 2552(a). One consideration will be Guidelines established by the United States Sentencing Commission. I understand that these Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and

---

[2]The indictment charged Defendant along with eight co-defendants with various crimes. (Criminal No. 2:11-cr-00001-5, Docket Entry No. 3).

> I have discussed the calculation of the Guidelines in my case. I have been advised by my attorney that the guideline calculation in my case should be **sixty-three (63) to seventy-eight (78) months.** I realize that this is simply my layer's estimate. I understand that my advisory Guideline range will be calculated by the United States Probation Officer who prepares the presentence report in my case. This estimation is subject to challenge by either me or the government, unless prohibited by a plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order that restitution be made to any victim of the offense. [If I am convicted of any offense specific in 18 U.S.C. § 3663A(c), or as otherwise required by law, restitution is mandatory.] I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

Id., at 1-2 (emphasis in original).

On January 11, 2013, the Court sentenced Movant to 92 months imprisonment. Id., Docket Entry No. 445. The Court also sentenced Movant to three years of supervised release. Id. at 3.

At the June 29, 2015 evidentiary hearing on his § 2255 ineffective assistance of counsel claims, Movant testified on direct examination that he went over guidelines with his attorney Benjamin Perry. (Civil No. 2-14-cv-00013, Docket Entry No. 53 at 7-8). Movant believed that his guideline range was 63 to 78 months. Id. at 9. Movant testified that his attorney stated that he would be surprised if the Court sentenced him to over 60 months. Id. at 10. Movant testified that if he had known that his guideline range was 92 to 115 months he may have changed his opinion of whether to go to trial. Id. at 10. Movant also testified that his attorney discussed with him what type of evidence would be submitted in seeking the Court to go below the guidelines, such as Movant's mental health history, the extent of his involvement in the whole case, and childhood factors. Id. at 11-12. Movant admitted that his attorney provided evidence of his mental health history at sentencing. Id. at 12.

5

As to Movant's claim that his conviction was based upon evidence seized as a result of an unconstitutional search and his counsel failed to file a motion seeking suppression of a cell phone that contained photographs of him holding a gun, Movant testified that his attorney advised him that, because Movant gave the cell phone to his girlfriend, Movant could not contest the search of another person. Id. at 12-15. Movant also testified that after sentencing he directed his attorney to appeal. Id. at 17-18. Movant testified that his attorney convinced him "that it was probably in [his] best interest just to leave [an appeal] alone" because his attorney was concerned that, if Movant won on appeal, Movant could receive a higher sentence because "the issues we had would still be within the guidelines." Id. at 18-19.

When asked if there was anything else he wanted to address with the Court, Movant stated, "The only other thing that I would like to address was the fact that the judge granted me my credit for time served and the DOC won't honor it without the finding of one-third, but other than that – but the issues that we covered are, I believe, the main issues." Id. at 22.

On cross examination, Movant admitted that he made a videotaped statement admitting to holding the weapon in the photograph. Id. at 24. Movant testified that his attorney filed a motion to suppress, but later withdrew it. Id. at 25. As to the ownership of the cell phone, Movant testified as follows:

> Q. But you never said that the phone was yours, that the phone was ours, that you had bought it, anything like that; right?
>
> A. Well, at the time, I was never advised as to those were ways to develop standing, so I was not familiar with that. I didn't know that I had to, you know, specifically say, "my phone."

Id. at 26.

Movant also admitted that he knew the guideline range was an estimate and not binding. Id. at 27. Movant then read a letter dated January 31, 2012, from his attorney who stated "As we discussed, anything in the five-year range would be a good outcome, and anything less than that would be a very good outcome." Id. at 28, Exhibit F. Movant admitted that statement implied that it was possible that he could be sentenced to more than five years. Id. at 29.

Movant further admitted that, during the plea colloquy, Movant stated that he was satisfied with counsel's representation and that he was pleading guilty voluntarily. Id. at 29-30. Movant also understood that, if he received a sentence that he did not like, he could not take back his guilty plea and that the final sentence would be determined by the Court. Id. at 30. When the Court at the end of the guilty plea colloquy, asked if Movant still wanted to enter the guilty plea, Movant said, "Yes." Id.

According to Movant, after the plea hearing, he thought about changing his plea and going to trial after he learned that the guidelines showed 92 to 115 months. Id. Movant testified that he understood that if he went to trial, the evidence against him would be a photograph of him holding a weapon, his lengthy videotape statement where he admitted to possessing the weapon, and potential testimony of other people who witnessed him possessing the weapon. Id. at 31. Movant testified that his attorney told him that the guidelines were only advisory and the Court could go below them. Id. at 32. Movant stated that he and his attorney discussed strategy to contest the guidelines and that his attorney presented evidence of his mental health by submitting mental health records and referencing Movant's mental health history as grounds for requesting a 36 month sentence. Id. at 32-34. Movant admitted that his attorney asked the Court to make the 36 month sentence that he was requesting concurrent with his state sentence. Id. at 35.

7

Movant denied that he had a conversation with his attorney on January 21, 2013, asking him to file an appeal, but stated that it was either the last week of January or the beginning of February that he told his attorney not to file a notice of appeal. Id. at 37-38. Movant admitted that in their discussion about whether to appeal, Movant's counsel explained that if he were to win on appeal and the case was remanded, the probation office might discover two prior convictions that were previously missed when drafting the presentence report. Id. at 38. Movant's counsel also explained that the question of whether the gun had a large magazine was a factual question. Id. Respondent then asked, "But at the end of this conversation that you're not sure when it was, you understood that he was not going to be filing an appeal for you; right?" to which Movant responded, "Yes, sir." Id. at 39.

In a letter dated July 7, 2013, that Movant orally read at the hearing, Movant's counsel stated the following:

> This letter is to simply confirm that during the conversation, we had discussed potential outcomes of an appeal of your sentence, in particular, the fact that your sentence could potentially increase at the subsequent sentencing. After our discussion, you informed me that you did not want to appeal your sentence, and I then conveyed the information to AUSA Hannafan. If you feel that this letter does not accurately reflect our discussion on January 21, please let me know. As always, please do not hesitate to contact me with any questions.

Id. at 40, Exhibit E. Movant admitted that he did not respond to his counsel. Id. at 40.

As to Movant's claim in his pro se motion that his "conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure," Movant admitted that he did not assert that the cell phone belonged to him, but described it as his girlfriend's cell phone. Id. at 42-43.

8

As to Movant's statement, "[a]n ill-advised plea is not what I am trying to raise," made in a February 6, 2014 email to his attorney concerning Movant's § 2255 motion, Movant testified that he was "'not claiming it was an ill-advised plea,'" but that he was explaining to his attorney that Movant was challenging just the legality of the search of the cell phone. Id. at 46-47, Exhibit C. Movant further testified:

> Q. In fact, [Perry's] e-mail specifically says you have no expectation of privacy as to a photo in someone else's phone or camera; right?
>
> A. Yes, sir.
>
> Q. And in your response, did you say, "Wait a minute, that's not someone else's phone, that's my phone"?
>
> A. No, I didn't.

Id. at 50. Movant further admitted that, throughout his attorney's representation of him at the plea and sentencing stages and throughout his first § 2255 motions, Movant never told his attorney that the cell phone was Movant's cell phone or "our cell phone," that is, Movant's and his girlfriend's. Id. at 52-53.

As to Movant's claims, Movant's testimony reflects the following:

> Q. And you acknowledge that Mr. Perry specifically advised you that five years should be considered a good outcome and that a longer sentence was possible?
>
> A. Well, in his letter, he doesn't say a longer sentence is possible, although I know one is. He says a five-year range is good and anything less is great.
>
> Q. But you knew that a good outcome wasn't guaranteed. If five years is a good outcome, then it's possible you could get a bad outcome; right?
>
> A. Of course. Yes.

9

Q. And after you filed your first 2255 petition, in your e-mail exchange with Mr. Perry, you explicitly told him that you weren't trying to claim that your guilty plea was involuntary because of bad advice; right?

A. Yes, sir.

Q. And your third claim is about deficient advice and failure to file an appeal; right?

A. Yes, sir.

Q. And you acknowledge that you had several conversations with Mr. Perry about whether to appeal right?

A. Yes, sir.

Q. And you also acknowledge that in the last conversation you had with him, you told him not to appeal; right?

A. Yes, sir.

. . . .

Q. Do you acknowledge that Mr. Perry filed a number of documents about your mental health issues?

A. Yes, sir.

Q. And that he discussed your mental health issues in his sentencing memorandums and referenced them in the sentencing hearing?

A. Yes, sir.

Q. And your fifth claim is failure to propose a partially concurrent sentence; right?

A. Yes, sir.

Q. But you acknowledge that Mr. Perry, in fact, asked for a full concurrent sentence, which would have been better than a partially concurrent sentence; right?

A. Yes, sir.

. . . .

> Q. And was your guilty plea involuntary?
>
> A. Well, I went in and pled guilty voluntarily.

Id. at 53-55.

Movant's counsel, Ben Perry, testified that the cell phone was always referred to as Movant's girlfriend's phone, never as Movant's cell phone or one that he used. Id. at 70. Perry also testified that he advised Movant that Movant did not have standing to challenge a photograph found in someone else's cell phone or someone else's camera or someone else's house during a search. Id. As to the videotaped statement, Perry testified that "it was pretty clear," that "[i]t was probably one of the cleanest police interviews" he had seen, and that the interview started off with the police Mirandizing him, Movant stating that he understood his rights, and Movant signing a Miranda waiver. Id. Perry did not see any issues with the statement on its face. Id. at 70. Perry testified that, if the cell phone and statement were somehow suppressed, police could have used other evidence against Movant as the weapon Movant was photographed holding was recovered and there were witnesses who had seen Movant holding the weapon. Id. at 71.

Perry further testified that "the best offer that we had ever gotten from the Government was bottom of the guidelines, according to their calculations, which was the 92 months," and informed Movant that "in my opinion, an open plea, there really wasn't anything to lose." Id. at 72. Perry stated that he filed voluminous mental health records and that as a strategic decision he did not call Movant's mother at sentencing because "it was not a particular witness that I thought was going to add anything to our circumstance." Id. at 77-78. After sentence was imposed, Movant did not tell him file an appeal. Id. at 79-80. Perry testified that on January 21, 2013, after discussions with Movant about filing an appeal, Movant said not to file an appeal. Id. at 81. Perry further testified

11

that Movant did not respond to his July 2013 letter stating there were any inaccuracies with Perry's summary. Id. at 83.

On cross examination, Perry testified that Movant "never indicated that he ever used the phone. It was always, 'Tracy's phone, my girlfriend's phone, my fiance's phone.'" Id. at 92.

## B. Conclusions of Law

For relief under § 2255, a prisoner must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion asserting constitutional error, a movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993)). To prevail on a § 2255 motion asserting non-constitutional error, the movant must show a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Id. (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) citing Hill v. United States, 368 U.S. 424, 428 (1962) (internal quotation marks omitted)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, Missouri v. Frye, --- U.S. ----, 132 S. Ct. 1399, 1404 (2012), and this right applies to "all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (citation omitted). Given his guilty plea, Movant's claims for relief are limited as a matter of law:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. <u>He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in</u> [McMann. v. Richardson, 397 U.S. 759, 770 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (emphasis added).

Since Tollett, the Supreme Court reiterated in United States v. Broce, 488 U.S. 563 (1989), on a defendant's withdrawal of his guilty plea:

> "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S., at 757, 90 S.Ct., at 1473 (citation omitted).
>
> Similarly, we held in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), that a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." Id., at 770, 90 S.Ct., at 1448. See also Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("[J]ust as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings") (citation omitted).

Id. at 572.

To establish ineffective assistance of counsel, Movant must demonstrate that his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691.

In Strickland, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . [, as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

14

To establish that counsel's performance was deficient under Strickland, a movant "must identify acts that were 'outside the wide range of professionally competent assistance.'" Smith v. United States, 348 F.3d 545, 551 (6th Cir. 2003) (quoting Strickland, 466 U.S. at 690). In evaluating whether a movant has received counsel that falls short of what the Sixth Amendment guarantees to a defendant, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (quoting Strickland, 466 U.S. at 690).

In evaluating the prejudice prong, courts must be mindful that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. (citation omitted). Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting Strickland, 466 U.S. at 694).

"[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). Where the ineffective assistance of counsel claim involves a guilty plea, "the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett . . . ." Id. Under the "prejudice" requirement, "the defendant must show that there is a reasonable

15

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Thus, "[f]or example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006). Similarly, where counsel is alleged to have failed to advise the defendant of a potential affirmative defense "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003).

Based upon the testimony and evidence presented at the evidentiary hearing, Movant fails to show any factual or legal basis that Movant's counsel's performance was deficient in any way or that Movant suffered any prejudice from his counsel's performance. Thus, the Court concludes that Movant's claims for ineffective assistance of counsel lack merit.

As to Movant's claim arising under Johnson v. United States, 135 S.Ct. 2551 (2015), in Welch v. United States, 136 S. Ct. 1257 (2016), the Supreme Court held that "Johnson announced a substantive rule that has retroactive effect in cases on collateral review." Id. at 1268. Yet, that ruling does not address whether Johnson applies retroactively to the United States Sentencing Guidelines. The Supreme Court is expected to address the applicability of Johnson to the sentencing guidelines in Beckles v. United States, 136 S.Ct. 2510 (2016). In In re Embry, 831 F.3d 377, 382 (6th Cir. 2016) and In re Patrick, 833 F.3d 584, 589 (6th Cir. 2016), the Sixth Circuit has ordered

that in actions where the outcome is dependent on the decision in Beckles, district courts should hold them in abeyance pending the Supreme Court's decision.

Because Beckles is potentially dispositive of this action, the Court concludes that this action should be administratively closed, but may be reopened upon motion of any party after the Supreme Court's resolution.

An appropriate Order is filed herewith.

**ENTERED** this the 13th day of January, 2017.

WILLIAM J. HAYNES, JR.
Senior United States District Judge